# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **CHANTEL HALL,** | ) | |
| Plaintiff | ) | Civil Action No. 2:21cv00029 |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **KILOLO KIJAKAZI,**[1] | ) | |
| **Acting Commissioner of Social** | ) | By: PAMELA MEADE SARGENT |
| **Security,** | ) | United States Magistrate Judge |
| Defendant | ) | |

## *I. Background and Standard of Review*

Plaintiff, Chantel Hall, ("Hall"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying her claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. §§ 423 and 1381 *et seq.* Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition. Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rules of Civil Procedure Rule 25(d), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows Hall protectively filed applications for DIB and SSI[2] on February 21, 2019, alleging disability as of January 1, 2019, due to post-traumatic

---

[2] Hall previously filed an application for SSI on February 25, 2015, alleging disability as of March 1, 2013. (R. at 75.) By decision dated February 6, 2018, the ALJ denied her claim. (R. at 75-95.) After the ALJ issued his decision, Hall pursued her administrative appeals, but the Appeals Council denied her request for review. Hall then filed an action in this court seeking review of the ALJ's unfavorable decision. *See Hall v. Saul*, Case No. 2:18cv00052. By order dated May 11, 2020, this court granted summary judgment and affirmed the final decision of the Commissioner denying benefits. (R. at 112-13.)

Pursuant to the Fourth Circuit's opinion in *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473 (4th Cir. 1999), and in accordance with Social Security Acquiescence Ruling, ("AR"), 00-1(4), "[w]hen adjudicating a subsequent disability claim arising under the same…title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence" and consider its persuasiveness in light of all relevant facts and circumstances. A.R. 00-1(4), 65 Fed. Reg. 1936-01, at *1938, 2000 WL 17162 (Jan. 12, 2000). It is noted that, when *Albright* was decided, the agency "weighed" opinion evidence under different standards. *See* 56 Fed. Reg. 36932-01 at *36960, 1991 WL 142361 (Aug. 1, 1991). Those standards have been superseded by 20 C.F.R. §§ 404.1520c, 416.920c, which prescribe how to consider persuasiveness of opinion evidence and prior administrative findings in claims made on or after March 27, 2017. Because this claim was made after March 27, 2017, the ALJ is required to consider prior ALJ decisions and Appeals Council findings under *Albright. See* Program Operations Manual System, ("POMS"), DI 24503.005, available at http://policy.ssa.gov/poms.nsf/lnx/0424503005 (effective Apr. 13, 2021) (explaining the categories of evidence).

The ALJ in this case noted he reviewed the previous August 2017 decision and found that medical impairments assessed at that time were subject to change with the passage of time, and in fact did change, as the present case revealed additional and different medical impairments, including inflammatory arthropathy. (R. at 19.) Therefore, the ALJ found that the overall record supported a "somewhat different residual functional capacity assessment," which was more consistent with the state agency consultants' opinions. (R. at 19.)

stress disorder, ("PTSD"); type 1 diabetes; neuropathy; gout; scoliosis; neck and back problems; fibromyalgia; migraine headaches; rheumatoid arthritis; "dizzy spells;" anxiety; and depression. (Record, ("R."), at 10, 275-76, 280-83, 286-95, 335, 365, 387.) The claims were denied initially and on reconsideration. (R. at 187-89, 198-201, 208-26.) Hall requested a hearing before an administrative law judge, ("ALJ"). (R. at 227-28.) A hearing was held on December 3, 2020, at which Hall was represented by counsel. (R. at 35-71.)

By decision dated January 7, 2021, the ALJ denied Hall's claims. (R. at 10-21.) The ALJ found Hall met the nondisability insured status requirements of the Act for DIB purposes through September 30, 2021. (R. at 12.) The ALJ found Hall had not engaged in substantial gainful activity since January 1, 2019, the alleged onset date.[3] (R. at 12.) The ALJ determined Hall had severe impairments, namely a spine disorder; diabetes mellitus; fibromyalgia; inflammatory arthropathy; affective disorder; anxiety disorder; and trauma and stress-related disorder, but he found Hall did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 12-13.)

The ALJ found Hall had the residual functional capacity to perform light[4] work, except she was limited to simple, routine tasks and simple work-related decisions; she could have occasional interaction with supervisors, co-workers and

---

[3] The ALJ noted that Hall worked after the alleged disability onset date, but this work did not rise to the level of substantial gainful activity. (R. at 12.)

[4] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2021).

the public; and she was limited to few changes in the work setting.[5] (R. at 15.) The ALJ found Hall had no past relevant work. (R. at 20.) Based on Hall's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found a significant number of jobs existed in the national economy that Hall could perform, including the jobs of a marker, a photocopy machine operator and an office helper. (R. at 20-21, 64-66.) Thus, the ALJ concluded Hall was not under a disability as defined by the Act, and she was not eligible for SSI and DIB benefits. (R. at 21.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2021).

After the ALJ issued his decision, Hall pursued her administrative appeals, (R. at 268-69, 442-44), but the Appeals Council denied her request for review. (R. at 1-5.) Hall then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2021). This case is before this court on Hall's motion for summary judgment filed December 14, 2021, and the Commissioner's motion for summary judgment filed January 13, 2022.

## II. Facts

Hall was born in 1973, (R. at 20, 42), which classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). She has two years of college and vocational training in cosmetology. (R. at 336.) Hall testified at her hearing that she worked part-time as a cosmetologist, with few customers and limited

---

[5] The ALJ placed several limitations on Hall's physical work-related abilities; however, since Hall's argument centers around her mental limitations, the court will discuss only the limitations related to her mental residual functional capacity. (R. at 15.)

associated income. (R. at 43-45, 52.) Hall testified at her hearing that she drove back and forth to work daily. (R. at 43.) She stated she worked 20 to 24 hours a week. (R. at 43.) Hall testified she did not work more hours due to panic attacks and pain. (R. at 46.) She stated she experienced two to three panic attacks a day. (R. at 54.)

In rendering his decision, the ALJ reviewed records from Stephen P. Saxby, Ph.D., a state agency psychologist; Leslie E. Montgomery, Ph.D., a state agency psychologist; Dickenson County Behavioral Health, ("Behavioral Health"); Family Preservation of Virginia, ("Family Preservation"); Dickenson Medical Clinic; Clintwood Community Medical Care; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Wellmont Medical Associates; The Health Wagon; Wellmont Medical Associates; Norton Community Hospital; and Arthritis Associates.

By way of background, Hall began treatment at Behavioral Health in March 2015[6] for complaints of depression and anxiety resulting from financial, family, health, legal[7] and work stressors. (R. at 628.) She was diagnosed with major depressive disorder, recurrent, moderate; generalized anxiety disorder; and sedative, hypnotic or anxiolytic abuse, uncomplicated. (R. at 629.)

On December 18, 2015, Annabell Pannell, F.N.P., a family nurse practitioner with Dickenson Medical Clinic, completed a mental assessment,

---

[6] This court's previous Report and Recommendation reviewed records from Behavioral Health from March 2015 through August 2017. Therefore, this evidence will not be discussed. *See Hall v. Saul*, Case No. 2:18cv00052, (Docket Item No. 17).

[7] In 2015, Hall reported stress related to being charged with food stamp fraud, as well as testing positive for the use of Suboxone and oxycodone. (R. at 880, 892.)

indicating that Hall had no limitations on her ability to maintain personal appearance. (R. at 898-900.) She found Hall had slight limitations on her ability to follow work rules and to understand, remember and carry out simple job instructions. (R. at 898-99.) Pannell opined Hall had a satisfactory ability to relate to co-workers; to deal with the public; to function independently; and to understand, remember and carry out detailed job instructions. (R. at 898-99.) She found Hall had a seriously limited ability to use judgment; to interact with supervisors; to deal with work stresses; to maintain attention and concentration; to understand, remember and carry out complex job instructions; to behave in an emotionally stable manner; to relate predictably in social situations; and to demonstrate reliability. (R. at 898-99.) Pannell found Hall would be absent from work more than two days a month. (R. at 900.)

On May 18, 2017, Hall established care with Susan Wagner, N.P., a nurse practitioner at Clintwood Community Medical Care. (R. at 1044.) Hall reported anxiety, crying spells, depression and sleep disturbance. (R. at 1044.) Hall was fully oriented, she denied suicidal ideation, she was moderately depressed, and she had no gross neurological deficits.[8] (R. at 1046.) Wagner diagnosed generalized anxiety disorder, malaise and fatigue. (R. at 1046.) On June 29, 2017, Hall reported panic attacks in addition to generalized anxiety, which were triggered by marital discord. (R. at 1055.) On July 27, 2017, Hall complained of severe stress related to family issues and moderate fatigue. (R. at 1060.) Wagner included insomnia in her diagnosis. (R. at 1063.) On August 23, 2017, Hall reported that medication had improved her sleep. (R. at 1066.)

---

[8] Throughout 2017, Wagner's examination findings remained unchanged. (R. at 1052, 1057, 1063, 1068.)

On October 4, 2017, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Hall at the request of Hall's attorney. (R. at 1079.) Hall reported she worked as a hairdresser four to six hours a day. (R. at 1081.) Hall's grooming and hygiene were adequate; her speech was clear and intelligible; her affect was flat and blunt; she had a depressed mood; and she displayed no signs of ongoing psychotic processes, delusional thinking or hallucinations. (R. at 1082.) Hall was able to recall four out of five words after 10 minutes but could not perform Serial 7s correctly nor could she interpret any of the three commonly used adages; and she could spell the word "world" correctly forwards but not backwards. (R. at 1083.)

The Wechsler Adult Intelligence Scale - Fourth Edition, ("WAIS-IV"), was administered, and Hall obtained a full-scale IQ score of 65. (R. at 1083.) The Minnesota Multiphasic Personality Inventory – 2, ("MMPI-2"), was administered, however, it was discontinued due to Hall's inability to read the questions correctly and to understand the vocabulary imbedded within the questions. (R. at 1084.) Lanthorn diagnosed major depressive disorder, recurrent, severe with anxious distress, and panic disorder. (R. at 1084.) Lanthorn opined Hall was competent to manage her own funds. (R. at 1084.) He reported Hall had limited cognitive skills and was functioning in the mildly mental retarded range.[9] (R. at 1084.)

On October 16, 2017, Lanthorn completed a mental assessment, indicating Hall had a satisfactory ability to follow work rules; to function independently; and to understand, remember and carry out simple job instructions. (R. at 1086-88.)  He

---

[9] The ALJ found the overall record revealed largely normal intellect. (R. at 20.) Additionally, the ALJ noted Hall completed high school, without special education, and completed cosmetology school. (R. at 20.) Hall does not contest this finding.

found Hall had a seriously limited ability to relate to co-workers; to deal with the public; to use judgment in public; to interact with supervisors; to deal with work stresses; to maintain attention and concentration; to understand, remember and carry out detailed job instructions; to maintain personal appearance; to behave in an emotionally stable manner; and to demonstrate reliability. (R. at 1086-87.) Lanthorn opined Hall had no useful ability to understand, remember and carry out complex job instructions. (R. at 1087.) He found Hall would be absent from work more than two days a month. (R. at 1088.)

On October 18, 2017, Wagner completed a mental assessment, indicating Hall had an unlimited ability to follow work rules and to maintain personal appearance. (R. at 1092-94.) She found Hall had a satisfactory ability to relate to co-workers and to interact with supervisors. (R. at 1092.) Wagner found Hall was seriously limited in her ability to deal with the public; to use judgment; to function independently; and to understand, remember and carry out simple and detailed job instructions. (R. at 1092-93.) She opined Hall had no useful ability to deal with work stresses; to maintain attention and concentration; to understand, remember and carry out complex job instructions; to behave in an emotionally stable manner; to relate predictably in social situations; and to demonstrate reliability. (R. at 1092-93.) Wagner opined Hall would be absent from work more than two days a month. (R. at 1094.)

Throughout 2018, Hall continued to receive counseling at Behavioral Health for depression stemming from legal and family issues, her mother's failing health and finances. (R. at 1103, 1105, 1107, 1109, 1111.) On December 19, 2018, James Counts, a qualified mental health professional with Behavioral Health, noted Hall had legal issues, she had a pending disability case, she had limited income, she

worried over her mother's health, and she had issues coping with past life events. (R. at 1100.)

On January 15, 2019, Hall saw C. Jane Phillips, a licensed mental health professional with Behavioral Health, and reported she continued to have depressive symptoms. (R. at 628.) She stated she felt her life was getting "a little better" until she was charged with driving under the influence of drugs, ("DUID"). (R. at 628.) Hall stated she continued to take care of her ill mother. (R. at 628.) She also reported she continued to work at the beauty salon and had a second job in a retail store. (R. at 628.) Hall stated the Social Security Administration recommended she not refile for disability due to working two jobs and suggested she quit one of her jobs and then reconsider filing. (R. at 639.) She stated she had to work because she had to pay for an interlock system in her car due to her DUID charge. (R. at 639-40.) Hall's mood was depressed with a flat affect and her thought content, thought process, judgment and insight were normal. (R. at 625.) Hall's diagnosis remained the same. (R. at 629.) Throughout 2019, Hall reported increased anxiety and depression due to her mother and grandmother's health, and their subsequent death; financial difficulties; worry over renewing her car insurance after being charged with DUID; and finding a new primary care physician after her doctor refused to see her based on her past DUID charge. (R. at 633, 635, 637-38, 690, 692, 697, 700, 702, 707, 709, 711.) In July 2019, Hall reported a very limited support group but stated she was able to get some socialization at work. (R. at 709.)

On June 18, 2019, Hall established care at Family Preservation for anxiety, depression and insomnia. (R. at 1187.) Hall reported her symptoms had increased since her mother passed away the previous month. (R. at 1187.) She also reported

significant trauma history with being sexually assaulted as a child, and she stated she worried all the time over finances and work stressors. (R. at 1187.) Leslie Amanda Davis, F.N.P., a family nurse practitioner with Family Preservation, found Hall was well-groomed, friendly and cooperative; she made good eye contact; her speech was normal; her insight was full; her judgment was good; her functional impairment was mild; her impulse control was good; she was fully oriented; her attention and concentration were adequate; she exhibited no memory impairment; and her mood was anxious and hopeful with an appropriate affect. (R. at 1187-88.) Hall was diagnosed with generalized anxiety disorder and trauma and stressor-related disorder. (R. at 1190.) Hall continued treatment with Family Preservation through November 2020. During this time, Hall reported struggling with anxiety, depression and worry stemming from her mother's death and situational stressors.[10] (R. at 716, 1190, 1199, 1207, 1210, 1213.) Hall's examination findings remained unchanged, except her mood was described as depressed and calm; she had a flat affect; she had mild to no functional impairment; and her judgment and impulse control ranged from good to excellent. (R. at 716-17, 1190-91, 1193-94, 1196-97, 1199-1200, 1204-05, 1207-08, 1210-11, 1213-14, 1243.) Hall reported she was doing well with her medications, and she had no issues or behavior complaints. (R. at 1199, 1207, 1210, 1213, 1242.)

On September 18, 2019, Stephen P. Saxby, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding Hall's depressive, bipolar and related disorders and anxiety and obsessive-compulsive disorders were severe. (R. at 119-21.) He opined Hall had moderate limitations on her ability to understand, remember or apply information; to interact

---

[10] On November 21, 2019, Hall saw Dr. Benjamin Wiseman, M.D, a physician with Family Preservation, noted Hall had "a lot of situational stressors." (R. at 716.)

with others; to concentrate, persist or maintain pace; and to adapt or manage herself. (R. at 120.) Saxby opined Hall could perform unskilled work with limited social interactions. (R. at 120.) On February 11, 2020, Leslie E. Montgomery, Ph.D., a state agency psychologist, completed a PRTF, which mirrored that of Saxby's September 18, 2019, assessment. (R. at 154-55.)

That same day, Saxby completed a mental assessment, finding Hall had moderate limitations in her ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; to respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others. (R. at 124-26.) Saxby stated Hall's work-related mental abilities were, otherwise, not significantly limited. (R. at 125-26.) Saxby noted Hall was able to adjust to simple changes; make realistic goals in a low stress work environment; understand, remember and comprehend simple, unskilled instructions; and maintain comprehension, pace and persistence for simple, unskilled work tasks. (R. at 125-26.) On February 11, 2020, Montgomery completed a mental assessment, which mirrored that of Saxby's September 18, 2019, assessment. (R. at 159-61.)

Throughout 2019 and 2020, Hall was seen by various providers for her physical ailments. During her office visits, it was regularly reported that Hall was fully oriented; she had intact insight and judgment; her mood, affect and behavior were normal; and her speech and communication were normal. (R. at 569, 578, 603, 607-08, 613, 618, 723, 729, 734, 741, 1116, 1129, 1140, 1165, 1171, 1177, 1182, 1251.)

Throughout 2020,[11] Hall continued with counseling at Behavioral Health for complaints of depression related to financial stressors, struggles with daily life, family relationships and the death of her mother. (R. at 1223, 1225, 1227, 1231, 1235, 1237.)

On October 13, 2020, Nicole Powers, N.P., a nurse practitioner with Family Preservation, completed a mental assessment, indicating Hall had a slight limitation in her ability to use judgment in public; to understand, remember and carry out simple and complex job instructions; and to maintain personal appearance. (R. at 1216-18.) She found Hall had a satisfactory ability to follow work rules; to function independently; to understand, remember and carry out detailed job instructions; and to demonstrate reliability. (R. at 1216-17.) Powers found Hall was seriously limited, resulting in an unsatisfactory work performance, in her ability to relate to co-workers; to deal with the public; to interact with supervisors; to behave in an emotionally stable manner; and to relate predictably in social situations. (R. at 1216-17.) She opined Hall had no useful ability to deal with work stresses and to maintain attention and concentration. (R. at 1216-17.) Powers opined Hall would be absent from work more than two days a month. (R. at 1218.) She based her findings on Hall's extreme anxiety and trauma. (R. at 1217-18.)

---

[11] On June 24, 2020, Hall she had returned to work. (R. at 1231.)

On October 27, 2020, Counts completed a mental assessment, indicating Hall had a satisfactory ability to use judgment in public; to function independently; to understand, remember and carry out simple job instructions; to maintain personal appearance; to behave in an emotionally stable manner; to relate predictably in social situations; and to demonstrate reliability. (R. at 1239-41.) He found Hall was seriously limited, resulting in an unsatisfactory work performance, in her ability to follow work rules; to relate to co-workers; to deal with the public; to interact with supervisors; to deal with work stresses; to maintain attention and concentration; and to understand, remember and carry out detailed job instructions. (R. at 1239-40.) Counts opined Hall had no useful ability to understand, remember and carry out complex job instructions. (R. at 1240.) He reported it was "unknown" as to how many days a month Hall would be absent from work. (R. at 1241.) Counts based these findings on Hall's major depressive disorder and generalized anxiety disorder. (R. at 1240-41.)

## III.  Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2021). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2021).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Hall argues the ALJ erred by improperly determining her residual functional capacity by rejecting the opinions of Pannel, Wagner, Lanthorn, Powers and Counts and by giving controlling weight to the opinions of the state agency physicians. (Plaintiff's Memorandum In Support Of Her Motion For Summary Judgment, ("Plaintiff's Brief") at 6-8.) Counts contends the state agency physicians' assessments were "stale [and] outdated." (Plaintiff's Brief at 8.)

Because this matter involves a claim filed after March 27, 2017, a new regulatory framework applies to the ALJ's evaluation of medical opinions in the record. For applications filed on or after March 27, 2017, the Social Security Administration, ("SSA"), has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). Under the new regulations, ALJs no longer are required to assign an evidentiary weight to medical opinions or to accord special deference to treating source opinions. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2021) (providing

that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources").[12]

Instead, an ALJ must consider and articulate how *persuasive* he finds all the medical opinions and all prior administrative medical findings in a claimant's case record based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1520c(b), (c)(1)-(5), 416.920c(b), (c)(1)-(5) (2021) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) (2021).

In evaluating the persuasiveness of an opinion or finding, the SSA deems supportability and consistency "the most important factors," and, thus, the ALJ must address those two factors in evaluating the persuasiveness of medical opinions or prior administrative medical findings. 20 C.F.R. §§ 404.1520c(b)(2),

---

[12] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (2021). Those regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5) (2021).

416.920c(b)(2) (2021).[13] In evaluating the supportability of a medical opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). In assessing the consistency factor, "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The new regulations also alter the way the ALJ discusses the medical opinions or findings in the text of the decision. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he considered each of them. Instead, when articulating his finding about whether an opinion is persuasive, the ALJ need only explain how he considered "the most important factors" of supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may comment on the other factors, including the source's relationship with the claimant, but generally has no obligation to do so. *See* 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3) (2021).

When the ALJ finds two or more opinions or findings about the same issue are both equally well-supported and consistent with the record, but are not exactly the same, the ALJ must consider the most persuasive factors, including the nature

---

[13] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(b)(3), (c)(3)-(5), 416.920c(b)(3), (c)(3)-(5).

A claimant's residual functional capacity refers to the most the claimant can still do despite her limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a) (2021). The ALJ found Hall had the residual functional capacity to perform light work, except she was limited to simple, routine tasks and simple work-related decisions; limited to occasional interaction with supervisors, co-workers and the public; and limited to few changes in the work setting. (R. at 15.)

In making his residual functional capacity finding, the ALJ stated he found the opinions of the state agency psychologists "persuasive," because they were supported by and consistent with the overall record. (R. at 18.) The state agency psychologists found Hall had the residual functional capacity to perform simple, routine tasks with occasional interaction in a low stress environment. The ALJ noted that, while the record revealed various psychiatric complaints and a history of treatment, Hall's mental status examination findings were mostly normal. (R. at 18.) He further noted that Hall could perform daily activities independently, including part-time work. (R. at 18.)

The ALJ stated he found the opinions of Powers, Pannell, Wagner and Lanthorn "unpersuasive" because they were remote from Hall's alleged onset date of January 1, 2019. (R. at 19-20.) The ALJ also found these opinions were inconsistent with the updated and overall record, which reveal largely normal mental status findings, as well as Hall's daily activities, which included part-time

-17-

work. (R. at 19-20.) While treatment records suggested Hall experienced anxiety and depression due to many stressors, there is no evidence showing she was unable to cope with them. To the contrary, Hall continued to work as a hairdresser and in retail. In addition, the record shows throughout 2019 and 2020, Hall was well-groomed, friendly and cooperative; she made good eye contact; her speech was normal; her insight and judgment were intact; her functional impairment was mild; her impulse control was good; she was fully oriented; her attention and concentration were adequate; she exhibited no memory impairment; and her mood affect. Furthermore, throughout 2020, Hall reported she was doing well with her medications, and she had no issues or behavior complaints. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986).

The ALJ found Counts's opinion "partially persuasive" because he supported his opinion with detailed explanation and discussion of Hall's reported symptoms. (R. at 19.) However, the ALJ found Counts was not an acceptable medical source under the regulations. (R. at 19.) As a qualified mental health professional, Counts is not considered an acceptable medical source as defined by the Act. *See* 20 C.F.R. §§ 404.1502(a), 416.902(a) (2021) (defining acceptable medical sources as licensed physicians, licensed or certified psychologists, and – for limited purposes – licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice nurses and licensed physician assistants). Counts found Hall was seriously limited, resulting in an unsatisfactory work performance, in her ability to follow work rules; to relate to co-workers; to deal with the public; to interact with supervisors; to deal with work stresses; to maintain attention and concentration; and to understand, remember and carry out detailed job instructions and no useful ability to understand, remember

and carry out complex job instructions. The ALJ noted the overall record was not consistent with more than moderate limitations, as Hall's mental status examination findings were mostly normal and she could perform daily activities independently, including part-time work. (R. at 19.)

The ALJ accounted for Hall's limitations by limiting her to simple, routine work with only occasional interaction with supervisors, co-workers and the pubic and limited to few changes in the work setting. (R. at 15.) The regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a) (2021); *Menkes v. Astrue,* 262 F. App'x 410, 412 (3d Cir. 2008) ("[P]erforming a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration."). Unskilled work is generally low stress and involves remembering only very short and simple instructions in a routine environment in which "concentration is not critical." Program Operations Manual System, ("POMS"), DI 25020.010(B)(3), available at http://policy.ssa.gov/poms.nsf/lnx/0425020010 (effective Apr. 5, 2007) (explaining that unskilled work involves "remember[ing] very short and simple instructions," and that "concentration is not critical").

Based on this, I find substantial evidence exists to support the ALJ's consideration of the medical evidence and his residual functional capacity finding.

### PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.     Substantial evidence exists in the record to support the ALJ's consideration of the medical evidence;

2.     Substantial evidence exists in the record to support the ALJ's residual functional capacity finding; and

3.     Substantial evidence exists in the record to support the Commissioner's finding that Hall was not disabled under the Act and was not entitled to DIB and SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Hall's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioners decision denying benefits.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:      August 17, 2022.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE